RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DARELL NASH, SR.,

        *Petitioner-Appellee,*

        *v.*

MICHELLE EBERLIN,

        *Respondent-Appellant.*

No. 05-3499

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 04-00435—James Gwin, District Judge.

Argued: December 8, 2005

Decided and Filed: February 10, 2006

Before: MOORE, ROGERS, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jerri L. Fosnaught, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for
Appellant. Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellee. **ON BRIEF:** Jerri
L. Fosnaught, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Kevin
M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellee.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. This is an appeal from the district court's grant
of habeas relief to Petitioner-Appellee Darell Nash, Sr. ("Nash"). Nash was convicted in Ohio state
court of felonious assault, and he sought habeas relief on the basis that the manifest weight of the
evidence did not support his conviction. The State argues that the district court erred in construing
Nash's manifest-weight-of-the-evidence claim as a claim for insufficiency of the evidence and that
Nash is not entitled to habeas relief on the basis of insufficiency. Nash asserts that the district court
correctly concluded that there was insufficient evidence that he intended to harm his wife when he
fired a gun in the course of a struggle with his son. Nash also filed a renewed motion for release
with this court, arguing that there is no basis for the continued stay of the district court's order. We
**VACATE** the district court's grant of Nash's petition for a writ of habeas corpus and **REMAND**
the case to the district court for review of the state-court trial transcript. We also **DENY** Nash's
renewed motion for release.

## I. BACKGROUND

On December 11, 2001, Connie Nash ("Connie") received a call at the nursing home where she worked from her husband's girlfriend. After finishing her shift at work, Connie came home and found Nash and a friend in the Nashes' kitchen playing cards. Connie told Nash's friend to leave so that she could speak with Nash. As he was standing up, Nash bumped Connie with his chair, and she "started swinging on him." Joint Appendix ("J.A.") at 148 (Tr. at 94). Nash got out of his chair and grabbed Connie, and they began to fight. She tripped over a highchair and fell down. The Nashes' adult son, Darell Nash, Jr. ("Darell Jr."), and their nephew, William Jeter, heard the noise and came up from the basement; they found Connie and Nash screaming at each other.

Nash ran upstairs and then returned with a .9-millimeter handgun.[1] The handgun was loaded. Upon seeing the gun, Darell Jr. grabbed Nash, which caused the gun to fire into the ground. Connie went into the Nashes' daughter's room, and Nash followed her. Darell Jr. again grabbed Nash, and the gun fired into the wall.[2] Nash then put the gun away upstairs and left the house in his car.

Connie called the police, who came to the Nashes' house. Nash called the house while the police were there, and a detective listened in while Darell Jr. spoke with Nash on the phone. According to the detective, Nash stated, "[S]he did it this time. You can tell her she doesn't have a job any longer because I'm going to F'ing kill her." *State v. Nash*, No. 2002CA00106, 2003 WL 139783, at *1 (Ohio Ct. App. Jan. 13, 2003). Nash also asked Darell Jr. "whether Connie had 'cool[ed] down yet so that he could come home and talk things over.'" *Id.*

Nash gave a statement to the police in which he said "that he went upstairs and got the gun in order to scare his wife." *Id.* At trial, however, he testified that "his 'intention was to take the gun out of the house.'" *Id.* "[Nash], during his testimony, also testified that the handgun went off accidentally and denied making the threats that the Detective overheard him making during the telephone call." *Id.*

Nash was indicted by the Stark County Grand Jury for improperly discharging a firearm at or into a habitation or school safety zone and for knowingly causing or attempting to cause physical harm to Connie Nash by means of a deadly weapon or dangerous ordnance. Both charges had a firearm specification. On March 5, 2002, a jury found Nash guilty on both counts, and he was subsequently sentenced to a total of five years of incarceration. Nash appealed to the Fifth District Court of Appeals of Ohio, which overturned his conviction for discharging a firearm at or into a habitation or school safety zone[3] and upheld his conviction for felonious assault. *Nash*, 2003 WL

---

[1] At this point in the narrative, Connie's testimony at trial directly contradicted the original statement she gave to the police on December 11, 2001. Her trial testimony was based on a letter she sent to the police on January 25, 2002, which she claimed to have written to "tell the truth about what really happened." J.A. at 164 (Tr. at 110). She testified that Nash walked away from her after they were fighting, and she then left the house with the intention of breaking the window of his car. Connie stated that she could not find a brick or rock in the back, so she proceeded to the front of the house to retrieve a tire iron from her truck. At that point, she said that she heard Nash's car start and that he then left. When confronted at trial with her original statement to the police, Connie explained that she was upset with Nash and she wanted to hurt him at the time of the incident, but that she was telling the truth in her January 2002 letter.

[2] The State asserts that at this point, "the gun discharged in the direction of Nash's wife." Br. Appellant at 49. At oral argument, the State's attorney explained that evidence of this fact was presented to the jury. As will be discussed below, the district court did not have a copy of the full state-court trial transcript before it, and this evidence was not considered as a part of the habeas determination. (Nash attached the portion of the state-court trial transcript covering Connie's testimony to his traverse filed with the district court on July 27, 2004.)

[3] Nash's conviction was based upon the following statute:
(A)     No person, without privilege to do so, shall knowingly do any of the following:
(1)   Discharge a firearm at or into an occupied structure that is a permanent or temporary

139783, at *3. With regard to the felonious assault charge, the state appellate court held that Nash's conviction was not against the manifest weight of the evidence:

> Upon our review of the record, we find that appellant acted knowingly when, after arguing with his wife, he went upstairs to retrieve the gun. As is stated above, appellant told the police that he had retrieved the same in order to scare his wife. We concur with appellee that "[r]eturning to the argument in this situation gives rise to a probable result that the gun may go off."

*Id*. One judge dissented in part, stating that "the facts herein do not support a conviction of felonious assault." *Id*. at *4 (Hoffman, P.J., dissenting in part). Nash filed an appeal with the Ohio Supreme Court, which denied leave to appeal because the case did not involve a "substantial constitutional question." J.A. at 124 (Entry).

On February 3, 2004, Nash filed a petition for habeas relief in federal district court pursuant to 28 U.S.C. § 2254. The habeas petition — which Nash filed pro se — listed one ground for relief: "Felonious assault conviction was against the manifest weight of the evidence." J.A. at 8 (Habeas Pet.). The State filed a return of writ on June 21, 2004, arguing that Nash did not state a cognizable claim for federal habeas review because a manifest-weight-of-the-evidence claim is a matter of state law. The State further asserted that even if construed as a claim based on sufficiency of the evidence, Nash should still not prevail. On July 27, 2004, Nash filed a traverse to the State's return of writ in which he raised the issue of sufficiency of the evidence; he argued that his rights under the Fourteenth Amendment were violated when he was convicted of felonious assault without proof of intent.

A magistrate judge filed a report on November 5, 2004, recommending that habeas relief be denied. On April 1, 2005, the district court granted Nash's § 2254 petition. The district court ordered the State to release Nash from custody "within 30 days of this order." J.A. at 199 (J.). Although Nash's manifest-weight-of-the-evidence claim did not raise an issue of federal law, the district court liberally construed his petition to raise a claim based on sufficiency of the evidence. The district court concluded that "[e]ven viewing the facts in the light most favorable to the prosecution, a rational trier of fact could not conclude beyond a reasonable doubt that the petitioner knowingly caused or attempted to cause physical harm to his wife or to anyone else." J.A. at 195 (Op.).

On April 12, 2005, the State filed a motion requesting a stay of the district court's judgment in favor of Nash. On the same day, the State filed a notice of appeal with this court. The district court denied the State's motion for a stay on April 28, 2005. The State then filed in this court an emergency motion for a stay of judgment pending appeal. A judge of this court entered an order on April 29, 2005, temporarily staying the district court's judgment. A three-judge panel reviewed the case, and on June 9, 2005, granted the State's motion for a stay, ordered that counsel be appointed to represent Nash in his appeal, and ordered an expedited submission of the case to a merits panel. On August 18, 2005, Nash filed a renewed motion for release, and the State filed an opposition to Nash's motion.

---

habitation of any individual . . . .
OHIO REV. CODE § 2923.161. The state appellate court concluded that conviction pursuant to § 2923.161 was against the manifest weight of the evidence because "there is no evidence that appellant discharged his firearm *at* or *into* a habitation." *Nash*, 2003 WL 139783, at *3 (emphasis added).

## II. ANALYSIS

### A. Standard of Review

"This court reviews a district court's grant of a writ of habeas corpus *de novo*." *Sanford v. Yukins*, 288 F.3d 855, 859 (6th Cir.), *cert. denied*, 537 U.S. 980 (2002). Thus, we affirm the district court's grant of the writ if the requirements of 28 U.S.C. § 2254(d) are satisfied:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B. District Court Review of the State-Court Trial Transcript

The state-court trial transcript was not included in the record on appeal to this court, nor was it included or referenced in the district court docket.[4] The district court relied on the state appellate court's statements of fact in its determination of Nash's claims;[5] the state appellate court concluded that Nash's conviction was not against the manifest weight of the evidence, and the district court concluded that there was insufficient evidence to support Nash's conviction. *Nash*, 2003 WL 139783, at *3; J.A. at 195-96 (Op.). The State asserted before this court (in its brief and at oral argument) that Nash fired the gun in Connie's direction when they were in their daughter's bedroom, whereas the statement of the state appellate court that was relied upon by the district court merely observed without further detail that the gun fired into a wall. Br. Appellant at 49; *Nash*, 2003 WL 139783, at *1; J.A. at 187 (Op.). The State's attorney explained at oral argument that this information regarding the direction of the firing of the gun was presented to the jury but was not included in the record before the district court. Whether the gun was fired in Connie's direction is a fact that may be important for our determination of the merits of Nash's claim because of its relevance to the question of whether Nash knowingly attempted to harm his wife. We thus consider whether it is appropriate to remand this case to the district court to review the state-court trial transcript.

Rule 5(c) of the Rules Governing Section 2254 Cases states that "[t]he respondent must attach to the answer parts of the transcript that the respondent considers relevant."[6] In addition, "[t]he judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished." Rule 5(c), Rules Governing Section 2254 Cases. Regardless of any burden on the respondent to provide transcripts along with the answer,

---

[4]The State's attorney acknowledged at oral argument that the full state-court trial transcript had not been presented to the district court.

[5]The district court explained that "factual determinations by state courts receive a rebuttable presumption of correctness" on habeas review. J.A. at 187 (Op.); 28 U.S.C. § 2254(e)(1).

[6]The respondent is not required to file an answer to a habeas petition "unless a judge so orders." Rule 5(a), Rules Governing Section 2254 Cases.

there are cases that emphasize the importance of federal court review of such transcripts. In *Adams v. Holland*, 330 F.3d 398, 405-06 (6th Cir. 2003), *cert. denied*, 541 U.S. 956 (2004), the petitioner sought to amend the record before this court to include portions of the state-court trial transcript that were not presented to the district court.[7]  The transcript excerpts at issue were relevant to the petitioner's Confrontation Clause claim. *Id*. at 405. We held that it was improper to expand the record in this manner, and, further, that the district court judge *should* have reviewed the transcript. *Id*. at 406. The *Adams* opinion cites a number of cases for the "proposition that the District Court *must* have the trial transcript before it when making habeas determinations." *Id*. *Adams* concluded that in cases in which the district court does not review the state-court trial transcript, the case must be remanded for further findings. *Id*. at 406; *see also Hall v. Arbogast*, No. 88-5529, 1989 WL 119371, at *1 (6th Cir. Oct. 12, 1989) (stating that "[a] review of the state court transcript is usually necessary in habeas cases" and granting the petitioner's motion to remand) (citing *Townsend v. Sain*, 372 U.S. 293, 319 (1963), *partially overruled by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5 (1992)).[8]

Review of the state-court trial transcript may be particularly appropriate in cases involving sufficiency-of-the-evidence claims, because the test to be applied requires a review of all of the evidence: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,[9] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Rabinowitz*, 327 F.2d 62, 65 (6th Cir. 1964) (noting that a court must conduct a "meticulous review of the record" in order to determine properly whether sufficient evidence was presented in a case before it). In fact, there is a statutory requirement that pertinent portions of the trial transcripts be provided in cases involving sufficiency-of-the-evidence claims:

> If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

28 U.S.C. § 2254(f). This language underscores the importance of an independent review of the state-court record on the part of the federal courts with respect to sufficiency-of-the-evidence claims.

---

[7]Federal Rule of Appellate Procedure 10 sets forth the requirements regarding the record on appeal.

[8]*Townsend* established a test for determining when evidentiary hearings were required in habeas proceedings. *Townsend*, 372 U.S. at 312. The *Townsend* opinion states as follows:
> A District Court sitting in habeas corpus clearly has the power to compel production of the complete state-court record. Ordinarily such a record — including the transcript of testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, and other pertinent documents — is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings.

*Id*. at 319. Neither the current version of § 2254 nor the Rules Governing Section 2254 Cases appear to negate the above statement from *Townsend*.

[9]*Jackson* states that "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319.

A 1986 unpublished opinion of this court explained that "while perhaps not invariably required, an examination of the trial transcript should usually be carefully undertaken before a habeas corpus court endeavors to pass upon the constitutional sufficiency of the evidence, especially where it would strike down what has been upheld in all of the state court proceedings." *Crum v. Scroggy*, No. 85-5481, 1986 WL 17202, at *1 (6th Cir. June 17, 1986). The *Crum* court accordingly vacated the district court's grant of the petition for a writ of habeas corpus and remanded the case for further proceedings. *Id*. at *2. Two other cases from this court emphasize the importance of reviewing the transcript in the course of conducting a sufficiency-of-the-evidence analysis. In *Bronston v. Rees*, 773 F.2d 742, 743 (6th Cir. 1985), we explained that we had first remanded the case to the district court "with instructions that the actual transcripts of defendant's trial be filed" after concluding that the case presented a sufficiency issue, and in *Delk v. Atkinson*, 665 F.2d 90, 94 (6th Cir. 1981), we explained that "[t]he evidence has been summarized and discussed in three opinions. Nevertheless, we are required to make an independent determination of its sufficiency under the *Jackson v. Virginia* standard and have read the transcript of the trial for this purpose." Other circuits have also concluded that a review of the state-court trial transcript is necessary for sufficiency-of-the-evidence review. *See, e.g.*, *Magouirk v. Phillips*, 144 F.3d 348, 363 (5th Cir. 1998) ("We are at a loss to understand how a federal habeas court can conduct a meaningful sufficiency review without a transcript of trial."); *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997) (holding that the lack of evidence that the magistrate judge examined the trial transcript in its sufficiency-of-the-evidence analysis left the court "no alternative but to reverse" the denial of habeas relief and remand for review of the transcript).

We note that *Loveday v. Davis*, 697 F.2d 135 (6th Cir. 1983), rejected a strict rule requiring a district court to read the state-court trial transcript in every habeas proceeding. The petitioner in *Loveday* appealed from the district court's denial of his petition for habeas relief on the basis of insufficiency of the evidence, and he argued that the district court should not have denied his petition without reviewing the state-court trial transcript. *Id*. at 136. We analyzed this case under the previous version of § 2254(d), which set forth exceptions to the presumption of correctness given to state-court factual findings. *Id*. at 136-37. The petition did not specifically challenge the state-court factual findings, and it did not "seek to establish the existence of an exception to the presumption [of correctness]." *Id*. at 139. We concluded that the "district court was not required, given the allegations of the petition, to examine the trial transcript." *Id*. *Loveday* prohibits the imposition of a general rule requiring district courts to review the transcript in all cases, but it also does not prevent us from remanding for such a review if we believe that extra information is required. Neither Nash nor the State appear to challenge the state appellate court's factual statements; rather, the State cites evidence that may be in the trial transcript but simply was not discussed in the state court's opinion.

In light of the precedent discussed above and the unique circumstances of this case, we conclude that it is appropriate to vacate the district court's judgment granting Nash's petition for a writ of habeas corpus and to remand the case to the district court for review of the full state-court trial transcript.

## C. Nash's Motion for Release

We have not yet ruled on Nash's renewed motion for release requesting reconsideration of this issue by the panel. Federal Rule of Appellate Procedure 23 states as follows:

> (c) Release Pending Review of Decision Ordering Release. While a decision ordering the release of a prisoner is under review, the prisoner must — unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise — be released on personal cognizance, with or without surety.

> (d) Modification of the Initial Order on Custody. An initial order governing the prisoner's custody or release, including any recognizance or surety, continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified or an independent order regarding custody, release, or surety is issued.

Rule 23(c) "'creates a presumption of release from custody'" which "may be overcome in the appellate court 'for special reasons shown.'" *Workman v. Tate*, 958 F.2d 164, 166 (6th Cir. 1992) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987)).

Rule 23(c) creates a presumption of release while a "decision ordering the release of a prisoner is under review." Because we are vacating the district court's judgment granting Nash's request for habeas relief, this case is no longer "under review" here. Rule 23(c) is thus now inapplicable, and Nash's renewed motion for release is denied.[10]

### III. CONCLUSION

For the reasons discussed above, we **VACATE** the district court's judgment granting Nash's petition for a writ of habeas corpus and **REMAND** the case to the district court for review of the state-court trial transcript. We also **DENY** Nash's renewed motion for release.

---

[10]Although Nash's motion before this court cannot be granted because this case is no longer "under review," the district court has inherent authority to grant Nash bail while it reconsiders his petition with the benefit of the full trial record. *See Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (citing *In re Shuttlesworth*, 369 U.S. 35, 35 (1962) (per curiam) (for the proposition "that after petitioner seeks bail from state court, district court should 'proceed to hear and determine the cause, including any application for bail pending that court's final disposition of the matter'") *In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975) (per curiam) ("In spite of the lack of specific statutory authorization, it is within the inherent power of a District Court of the United States to enlarge a state prisoner on bond pending . . . decision on his application for a writ of habeas corpus.")); *see also Lee v. Jabe*, 989 F.2d 869 (6th Cir. 1993) (reviewing a district court's denial of bail pending the district court's consideration of a habeas petition). The district court may release petitioners on bail if there is a "substantial claim of law" and "the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Lee*, 989 F.2d at 871 (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). We leave it to the district court to exercise its discretion in the first instance with regard to this issue.