*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHNNY O. CLARK,

*Petitioner-Appellant,*

*v.*

No. 04-6373

ROBERT WALLER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-02951—J. Daniel Breen, District Judge.

Argued: March 8, 2007

Decided and Filed: June 25, 2007

Before: BOGGS, Chief Judge; and BATCHELDER and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** C. Mark Pickrell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellant. John H. Bledsoe, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** C. Mark Pickrell, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellant. John H. Bledsoe, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

BOGGS, Chief Judge. Johnny O. Clark appeals the district court's summary dismissal of his petition for a writ of habeas corpus. Clark was convicted of first-degree murder and, after exhausting his state post-conviction and appellate remedies, petitioned the district court under 28 U.S.C. § 2254, contending that his conviction was based on insufficient evidence, that his trial counsel was constitutionally ineffective, and that his post-conviction counsel was constitutionally ineffective. On appeal, he maintains the latter two claims, and contends that the district court erred in summarily dismissing his petition without ordering a response and reviewing the state court transcripts. We affirm.

I

According to the opinion of the Tennessee Court of Criminal Appeals on direct appeal of his conviction, early in the morning of March 15, 1995, Clark entered the house of his mother, where

1

he had usually lived until recent altercations between him and other residents, to retrieve some belongings. Tony Valentine, Clark's brother, asked Clark to leave when he appeared to be seeking a confrontation with Deron Cathey, another guest in the house. Valentine ultimately escorted Clark out of the house. A few hours later Clark returned and knocked on the door, at which point his mother allowed him to remain. Valentine awoke shortly thereafter to the sound of gunfire, and another houseguest, Mose Dire, observed Clark shooting Cathey, who was on a bed, unarmed and pleading for his life. At trial, Clark testified that Cathey had threatened him as he was retrieving belongings from a dresser, walked to the part of the house where guns were kept, and then approached him again, at which point Clark began shooting in self-defense. He further testified that three days earlier, Cathey had chased him from the house brandishing a weapon. Cathey was pronounced dead a few hours later, from multiple gunshot wounds. *See State v. Clark*, 1998 WL 170141 at *1-*2 (Tenn. Crim. App.).

After conviction by a jury, Clark appealed to the Tennessee Court of Criminal Appeals, claiming that the evidence was insufficient to convict him of first-degree murder; his appeal was denied. *Id.* at *4. He filed a petition for post-conviction relief with the county criminal court, contending that he had been denied effective assistance when his trial counsel failed to call Felix Lockett as a defense witness. According to the opinion of the Court of Criminal Appeals on review of the post-conviction proceeding, *Clark v. State*, 2002 WL 1841630 (Tenn. Crim. App.), Clark testified in that proceeding that Lockett was the only other person present in the room when he shot Cathey. He testified that Lockett had been unexpectedly admitted to the hospital roughly three weeks before start of trial, and subsequently died. He claimed that his counsel failed to secure Lockett's testimony, even though Clark had informed him that the testimony would support his defense. He sought to introduce a typewritten document that purported to be an affidavit made by Lockett, offering an account supporting Clark's self-defense theory, and at odds in a number of details with the account offered by other witnesses at trial. The post-conviction court refused to admit the document, on the grounds that a proper foundation for its authenticity had not been established.

Clark's trial counsel testified that he had attempted to locate and interview Lockett, along with all others who had been present at the house at the time of the shooting. He testified that his unsuccessful efforts included two visits to Lockett's house, sending investigators to the house, speaking to individuals of Lockett's acquaintance, and twice issuing subpoenas for him. He testified that he believed the state had also subpoenaed Lockett. During the course of his investigations, he learned that Lockett was elderly, and possibly experiencing "some problem with his mental thinking." He had been informed that Lockett had suffered a head injury that put him in the hospital, and claimed to have concluded that Lockett would not make a good defense witness. He testified that he kept Clark informed of the Lockett situation, and that Clark chose not to seek a continuance.

Clark's petition for post-conviction relief was denied after an evidentiary hearing. On appeal of this denial to the Tennessee Court of Criminal Appeals, Clark raised for the first time his contention that trial counsel had also been ineffective for his failure to call Jack Wafford, Clark's cousin, who he claimed would have testified that Cathey had showed him a gun at some point before the shooting, intimating that it was meant for Clark. The trial court had ruled that Wafford could testify for the limited purpose of establishing Cathey as the initial aggressor. Before he was called to the stand, however, the state objected, indicating that it had asked Clark's counsel for a recording of a defense interview with Wafford (who had claimed that the interview had been taped), but that counsel had been unable to find it. Trial counsel responded by claiming that his investigator said the interview had not in fact been taped, but that he would nevertheless not be calling the witness to testify. Clark claimed on appeal that his counsel had withdrawn Wafford as a witness because of his deficiency in failing to provide the required materials. The Court of Criminal Appeals held that the claim had been waived by his failure to present it in his post-conviction petition, and further observed that, even if it had not been waived, it would have failed on the merits because Clark had

made no showing of a likelihood of a different outcome had Wafford been permitted to testify. The Court of Criminal Appeals affirmed the post-conviction court's denial of relief. *Clark v. State*, 2002 WL 1841630 at \*10. Permission to appeal to the state supreme court was denied.

In his pro se federal habeas petition, Clark alleged that the evidence used to convict him was insufficient (in particular, that there was insufficient evidence of the deliberation element necessary for a first-degree murder conviction, and that the evidence instead pointed to self-defense), that his trial counsel and post-conviction counsel were ineffective (trial counsel for failing to call Lockett and Wafford, and post-conviction counsel for failing to raise trial counsel's ineffectiveness with respect to Wafford), and that he had exhausted his state remedies for these claims. In an accompanying memorandum, he stated the purported factual basis for his claims. The district court summarily dismissed Clark's petition, without ordering the state to respond, and, as far as the record indicates, without directly examining the records of the state court proceedings. In its order, the district court also denied Clark's requests for a certificate of appealability and leave to proceed *in forma pauperis*. An order of this court granted a certificate of appealability and pauper status, and *sua sponte* ordered counsel appointed for Clark. Clark now appeals the denial of his ineffective assistance claims, and argues that the district court erred by summarily dismissing his petition; he explicitly abandons his insufficiency of the evidence claim.

II

Whether the district court erred in summarily dismissing Clark's petition is a question of law that we review *de novo*. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). Clark concedes that state court factual findings are presumed to be correct in a federal *habeas* proceeding, and that this presumption can only be overcome with "clear and convincing evidence." 28 U.S.C. § 2254 (e)(1). He argues, however, that the procedural rules of 28 U.S.C. § 2243 and Rule 4 of the Rules Governing § 2254 Cases require a more probing inquiry than the district court conducted.

28 U.S.C. § 2243 provides that "[a] court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Clark argues that his application was not facially defective, and that the district court was thus required to order a response. Similarly, Rule 4 of the Rules Governing § 2254 Cases states that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . ." If not, the rule instructs the district court to "order the respondent to file an answer, motion, or other response . . . or to take other action the judge may order." Clark again concludes from that his petition, insofar as it is not facially defective, could not be summarily dismissed.

Clark's argument, essentially, is that if the district court needs to go outside the four corners of the petition (and its attachments) in order to dismiss it—if, in other words, the petition facially states a claim—it can not do so summarily. In particular, he contends that because he has raised factual questions, the district court was required to review the state court record directly, rather than rely on the state courts' factual determinations.

This question does not appear to have been squarely addressed by our precedents. Clark relies exclusively on *Loveday v. Davis* for the proposition that, as he puts it, where a state court's factual findings are in question, "[s]ummary dismissal of the petition without examination of the record would be improper." *Loveday*, 697 F.2d 135, 138 (6th Cir. 1983). In fact, *Loveday* was in no way so expansive, and, read correctly, its holding and the reasoning behind it point to a much different conclusion.

*Loveday* was decided under the presumption of correctness accorded to state court factual findings codified in the then-current version of 28 U.S.C. § 2254(d). The statute contemplated eight exceptions to that presumption, and the court observed that if a petitioner sought to avail himself of one of the enumerated exceptions, his petition "must at a minimum *allege* or provide indicia of the same" in order to trigger an inquiry that would require the district court to examine the trial record. 697 F.2d at 138. We noted a sister circuit's evaluation of a party's suggestion that, where a petition was based on an insufficiency of the evidence claim, it could *never* be appropriate to dismiss without an examination of the record, and approved that court's conclusion that "this is not so where . . . the testimony at the trial is summarized in the state appellate court's opinion and the petitioner does not quarrel with that summary . . . ," but instead quarrels with the factual inferences drawn from it. *Id*. at 139-40 (quoting *Davis v. Franzen*, 671 F.2d 1056, 1057 (7th Cir. 1982)).

Since *Loveday* was decided, the applicable level of deference to state fact-findings has, if anything, become greater under the provisions of AEDPA. *See* 28 U.S.C. § 2254(e)(1). Thus, while *Loveday* was decided under different statutory provisions, nothing in the intervening revisions undermines its analysis. Indeed, this court recently acknowledged that *Loveday* "prohibits the imposition of a general rule requiring district courts to review the transcript in all cases . . . ." *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006). In *Nash*, the panel vacated the district court's grant of a habeas petition based on an insufficiency of the evidence claim, and remanded for review of the transcript where, though neither party appeared to challenge the *accuracy* of the state court's summary of the evidence, the state contended that the transcript included relevant evidence that "simply was not discussed in the state court's opinion." *Ibid*.

Here, Clark makes no such claim. Though he takes issue with the state court's factual conclusions, he does not offer any specific dispute with the evidence, as summarized by the state courts, on which those conclusions were based. For example, as part of his ineffective assistance claim, Clark asserts that his counsel "did not vigorously pursue interviewing witnesses whose testimony could have assisted in developing [his] defense . . . ." He does not, however, allege any way in which the factual record would contradict the state court's opposite conclusion that trial counsel's efforts were sufficient. Indeed, the most specific factual dispute Clark offers in his brief is an alleged uncertainty concerning the precise number of subpoenas that had been issued for Lockett. Setting aside the question whether such a detail is in any way material to his claim, Clark crucially fails to take issue with the accuracy of the state court's summary of his counsel's testimony on this question, or suggest any omission from the summary of testimony in the record that might bear upon it. In other words, he does not quarrel with the state court's recitation of the relevant evidence, nor does he point to gaps in it—either of which might indeed require a review of the transcript —but only disagrees with the conclusions the state court drew from the evidence; and he gives no reason that the district court would have benefitted from reviewing the transcript in evaluating those conclusions.[1] Reasoning from the same principles this court approved in *Loveday*, the Seventh Circuit has concluded that

> the district court need not examine the trial records if two conditions are satisfied:
> (1) the state court opinions summarize the trial testimony or relevant facts; and

---

[1] A similar analysis applies to the "factual" dispute he urges in his reply brief, whether trial counsel failed to call Wafford because, as he contends, he had deficiently failed to make the proper disclosures and sought to deflect attention from his mistake, or, as the trial court concluded, because he had other, legitimate reasons for deciding not to put him on the stand. Again, Clark does not take issue with the state court's summary of the relevant testimony, or point to any omissions from it; he simply disagrees with the conclusion the state court arrived at, making speculative at best the notion that the district court's review of the evidence would have led to a different conclusion had it included a review of the transcripts. Indeed, Clark himself emphasizes the speculative nature of his claims in his brief, where he points out that "each of the other relevant findings of fact made by the State appellate court *may turn out* to contradict the clear and convincing evidence present in the entire State-court record" (emphasis added).

> (2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion.

*Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993) (citing *Davis*, 671 F.2d at 1057). Given that this court has rejected a rule requiring review of the transcript in all habeas cases, *Nash*, 437 F.3d at 525, the conditions announced in *Small* offer an appropriate standard, consistent with *Loveday* and its reasoning, for determining when such review is necessary. Under such a standard, it was not necessary here. Accordingly, the district court did not err in failing to review the transcripts of the state proceedings before summarily dismissing Clark's petition.

## III

Clark contends that, even without recourse to the full state court transcript, the district court erred in dismissing his ineffective assistance claims. He argues that the state court was incorrect in its determination that the testimony of the two uncalled witnesses—Lockett and Wafford—would not have affected the outcome of his trial.[2] In addition, he claims that his post-conviction counsel was constitutionally ineffective for failing to raise the ineffectiveness of his trial counsel with respect to Wafford, in order to excuse his procedural default of that claim in state proceedings, under the cause and prejudice analysis of *Coleman v. Thompson*, 501 U.S. 722 (1991).[3]

## A

The Tennessee Court of Criminal Appeals considered Clark's claim of ineffective assistance at trial waived with respect to counsel's failure to call Jack Wafford, because Clark failed to raise the allegation in his post-conviction petitions or at the evidentiary hearing. 2002 WL 1841630 at *7. Clark does not dispute that he defaulted this claim, and in order to excuse the default, he must show both cause for it and prejudice resulting from it. *Coleman*, 501 U.S. at 750. Clark offers his post-conviction counsel's ineffectiveness as cause. The state responds that, because there is no general constitutional right to effective counsel in state collateral proceedings, *id.* at 755 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1990)), and because "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation," *ibid.*, the representation by Clark's post-conviction counsel can not serve as cause for a default.

In fact, *Coleman* specifically left open the question of whether there might be an exception to the *Finley* rule "in those cases where state collateral review is the first place a prisoner can present a challenge . . . ," *ibid.* Tennessee disfavors ineffective assistance claims on initial direct appeal of right (where Clark would have had a right to effective counsel, *Douglas v. California*, 372 U.S. 353 (1963)), considering their fact-intensive nature to be more appropriate to post-conviction proceedings. *See, e.g.*, *State v. Carruthers*, 35 S.W.3d 516, 551 (Tenn. 2000). But while *Coleman* itself does not exclude the possibility of ineffective post-trial counsel serving as a cause for a procedural default of a trial-ineffectiveness claim under these circumstances, this court's application of it appears to do so. *See Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005); *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425 (6th Cir. 2003).

---

[2] Clark suggests that the state court's putative error was primarily an unreasonable determination of the facts under 28 U.S.C. §2254(d)(2), but his argument appears better characterized as a claim of unreasonable application of clearly established law (particularly the ineffective assistance standards of *Strickland v. Washington*, 466 U.S. 668 (1984)) under 28 U.S.C. § 2254(d)(1).

[3] Despite some inconsistency in the phrasing of his argument, Clark does not appear to assert ineffective post-conviction counsel as itself a ground for habeas relief, which would be clearly barred by 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Furthermore, Clark is clearly unable to demonstrate actual prejudice from his procedural default, the second element required under *Coleman* to excuse it. Insofar as the effect of the default was to bar his claim of ineffective assistance with respect to Wafford, it could only have resulted in actual prejudice if that underlying claim were itself meritorious. It is not. To prevail on the underlying claim, Clark would in turn have to prove not only that his trial counsel's performance was constitutionally deficient in failing to put Wafford on the stand, but that this failure in turn resulted in prejudice. *Strickland*, 466 U.S. at 694 ("defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.")

Whether or not Clark's allegation—that trial counsel declined to call Wafford to cover up his own failure to comply with disclosure requirements—might amount to deficient performance, Clark has offered no reason to suggest any probability that, had Wafford testified, the outcome of his trial would have been different. Indeed, he has offered no evidence, beyond his assertions, to prove what the content of Wafford's testimony would have been; *a fortiori*, he cannot show that he was prejudiced by its omission. *See Stewart v Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006). And even accepting Clark's assertion as to Wafford's testimony, he offers no basis to conclude that, in light of the other evidence presented at trial, it would likely have altered the outcome. Unable to prove prejudice resulting from the failure to call Wafford, Clark could not prevail on this ineffectiveness claim whatever the deficiency of his attorney in choosing that course of action. *Strickland*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered"). And because he could not prevail on that claim, he could not have been prejudiced by procedurally defaulting it; the default, accordingly, is not excused.

B

In addition to this defaulted claim, Clark properly raised a similar claim with respect to his trial counsel's failure to call or obtain the testimony of Felix Lockett. This claim is equally without merit. Indeed, his argument is nothing more than the assertion, based on the content of the purported affidavit he unsuccessfully sought to introduce in the state post-conviction proceedings, that "Felix Lockett's testimony clearly would have aided [his] defense"—a claim considerably weaker than a demonstration of a likelihood of a different outcome at trial. He provides no basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance, where evidence supported the conclusion that counsel had investigated and made a strategic choice. *See Strickland*, 466 U.S. at 690 ("[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). He offers no reason to believe that the state court's refusal to consider the purported affidavit was incorrect. *See Stewart*, 468 F.3d at 353 (state court need not consider inadmissible evidence in deciding ineffective assistance claim).[4] And, even accepting *arguendo* the purported affidavit as reflecting Lockett's likely testimony, in light of the other evidence presented at trial this does not, standing alone, provide a basis for concluding that the outcome likely would have been different. Clark contends that his counsel's attempts to secure Lockett's testimony were not as thorough as the state court concluded they were (though, as discussed above, he offers nothing more than speculation to that effect), but even if he could demonstrate that his counsel's performance were constitutionally deficient, here, as in the case of Wafford, he has offered no demonstration of prejudice. Accordingly, he has not made out a claim of ineffective assistance of counsel here.

---

[4]Tennessee Supreme Court Rule 28, §3(A) explicitly makes the Tennessee Rules of Evidence generally applicable in post-conviction proceedings, and the Rules appear to make no exception that would apply here.

IV

For the foregoing reasons, the district court's denial of Clark's petition is AFFIRMED.