*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KARL KRAUS, JR.,

        *Petitioner-Appellant*,

    *v.*

CLARK TAYLOR, Warden,

        *Respondent-Appellee*.

Nos. 10-5261/5262

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
Nos. 5:08-cv-128; 5:08-cv-129—Thomas B. Russell, District Judge.

Argued: January 23, 2013

Decided and Filed:  May 3, 2013

Before:  SUHRHEINRICH, MOORE, and GIBBONS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** William M. Barron, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, for Appellant. Perry T. Ryan, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.  **ON BRIEF:**  William M. Barron, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Perry T. Ryan, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

_____

### OPINION

_____

    JULIA SMITH GIBBONS, Circuit Judge.  Over the course of two trials, state court juries in Livingston County, Kentucky convicted Karl Kraus, Jr., on charges of first-degree rape, sodomy, and sexual abuse involving two mentally delayed women.  He

is now serving a prison sentence of seventy years with a life enhancement. After exhausting his direct appeals and pursuing a motion for post-conviction relief in the Kentucky courts, Kraus filed two *pro se* petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in federal district court. Clark Taylor, the Warden of the Kentucky State Reformatory in LaGrange, Kentucky, is the respondent in both cases. The district court denied the petitions in full, and Kraus appealed. Although the district court declined to issue a certificate of appealability ("COA") to Kraus in either case, a Rule 34 panel of this court granted Kraus a COA to review a narrow selection of the errors claimed by Kraus.

Kraus's petitions highlight serious concerns about his ability to confront the key witnesses at his trials, the sufficiency of the evidence supporting his convictions, and the competency of his counsel at the sentencing phase of his second trial. But, despite the district court's orders to Taylor to submit pertinent portions of the state court record, Taylor did not provide the district court with any records of Kraus's two trials, precluding meaningful review of Kraus's claims. Under this court's precedents, the merits of Kraus's petitions may not be considered without first giving the district court an opportunity to expand the record and re-evaluate the petitions.

We dispose of this appeal in two steps. First, we will expand the COA to include a Confrontation Clause claim arising out of Kraus's second trial that mirrors the Confrontation Clause claim arising from his first trial. Second, we will reverse the judgment of the district court in both cases and remand them for further proceedings. We will direct the district court to expand the record in both cases and reconsider the substantive constitutional claims identified in the COAs, including the newly added Confrontation Clause claim.

# I.

## A.

The Kentucky Court of Appeals summarized the events leading to Kraus's prosecution as follows:

> [Kraus] was employed by Security Taxi which provides transportation services to Creative Enterprises, a sheltered workshop/day program for mentally and physically handicapped people. Jessica Hale and Rachel Riley utilized the Security Taxi Service for that purpose. Due to a cerebral hemorrhage suffered as an infant, [Hale], aged 24 at trial, functions at about the level of a thirteen or fourteen-year-old child. [Reilly], aged forty-nine at the time of trial, functions at about the level of a four or five-year-old child. The charges against [Kraus] stem from an incident which occurred on May 21, 2002 when the women were returned to their homes late and not in the normal order. Both women were acting in an uncharacteristic manner and, upon questioning by their mothers, accused [Kraus] of sexual assault.

*Kraus v. Commonwealth*, No. 2004-CA-000183-MR, 2005 WL 790778, at *1 (Ky. Ct. App. Apr. 8, 2005). In light of these accusations, a grand jury indicted Kraus on charges of first-degree rape, first-degree sodomy, and first-degree sexual abuse against both Hale and Riley on June 27, 2002. Prior to trial, the state trial court judge conducted hearings to determine whether Hale and Riley were competent to testify at trial, and how such testimony would be taken. He permitted the two women to testify outside of the presence of Kraus and the jury during trial, via closed-circuit television, and agreed to let them use interpreters while on the stand.

On October 14, 2003, a jury found Kraus guilty of sexually abusing Hale but could not reach a verdict on any other count. Kraus received a five-year prison sentence. Prosecutors elected to retry him on the remaining counts. Before the start of his second trial, they supplemented the initial indictment by charging Kraus as a first-degree persistent felony offender ("PFO"). In the second trial, which concluded on November 18, 2004, a jury found Kraus guilty of rape and sodomy against Hale and rape and sexual assault against Riley. Kraus waived jury sentencing, pled guilty to the PFO enhancement, and agreed to accept the maximum sentence on all counts. The state trial

judge sentenced Kraus to sixty-five years in prison with a life enhancement. The trial court used substantially the same remote testimony procedure for examining Hale and Riley in both trials. In addition, all proceedings at both trials, including the testimony of Hale and Riley, were recorded on video in lieu of the contemporaneous creation of a record by a court reporter. These videos are the only known records of what actually took place during Kraus's trials.

Kraus appealed his first conviction for sexual abuse against Hale to the Court of Appeals of Kentucky ("Court of Appeals") while awaiting his second trial. That court affirmed the conviction on April 8, 2005. *Kraus*, 2005 WL 790778, at *5. The Kentucky Supreme Court ("Supreme Court") granted discretionary review of the Court of Appeals' decision on December 14, 2005. Meanwhile, Kraus appealed the conviction in his second trial directly to the Supreme Court, as required by the Kentucky Rules of Criminal Procedure for convictions resulting in serious sentences. *See* Ky. R. Crim. P. 12.02 ("[A]n appeal from a judgment imposing a sentence of death, life imprisonment, or imprisonment for 20 years or more shall be taken directly to the Supreme Court . . . ."). The Supreme Court consolidated the discretionary appeal arising from Kraus's first trial with the direct appeal arising from his second trial. After briefing, the Supreme Court issued a one-page order affirming the convictions based on "the opinion of the Court of Appeals" due to a tie vote, as the Supreme Court's rules dictate. Ky. R. S. Ct. 1.020(1)(a) ("[I]n appealed cases if one member is disqualified or does not sit and the court is equally divided, the order or judgment appealed from shall stand affirmed."). The order makes no mention of the grounds on which it affirmed the appeal of Kraus's second conviction, which was never presented to the Court of Appeals.

Kraus then raised a number of ineffective assistance of counsel claims linked to his second trial in a *pro se* motion for post-conviction relief under Kentucky Rule of Criminal Procedure 11.42 on January 24, 2007. The trial court denied the motion in full, without an evidentiary hearing, on March 22, 2007. Kraus appealed this ruling with the assistance of counsel. The Court of Appeals affirmed. *Kraus v. Commonwealth*, No. 2007-CA-000802-MR, 2008 WL 2065803 (Ky. Ct. App. May 16, 2008).

**B.**

Kraus brought a pair of *pro se* § 2254 petitions challenging his convictions in federal district court on August 5, 2008.  Case No. 08-CV-00129 addresses Kraus's first trial, and Case No. 08-CV-00128 pertains to Kraus's second trial.  After receiving Kraus's petitions and filing fees, the district court entered orders in both cases directing Taylor to "submit portions of the state court record pertinent" to Kraus's convictions, "including but not limited to exhibits, docket sheets, transcripts, and pleadings."  Taylor submitted Kraus's indictments and judgments of conviction, along with the briefing from his direct appeals and his post-conviction proceedings.  He did not submit the video recordings of Kraus's trials, including video of the testimony Hale and Riley gave via closed-circuit television, or written transcripts created from those videos.  On February 11, 2009, a magistrate judge issued a report and recommendation ("R&R") in both cases that suggested denying Kraus's petitions in full and denying a COA on all claims.  The district court adopted both R&Rs over Kraus's objections on January 20, 2010, without writing a separate opinion explaining its reasons.

On multiple occasions, Kraus objected to Taylor's failure to disclose the actual trial record to the district court.  Kraus filed at least five motions prior to the district court's entry of judgment requesting disclosure of the "transcript" from his second trial. He was apparently unaware that because his trials were recorded on video, there were no "transcripts" available for Taylor to produce.  When Taylor finally made Kraus aware of this problem in a response to one of Kraus's motions,  Kraus filed a "motion for mandamus relief" that asked for either a transcript of the video recording of the second trial or the video itself to be submitted into the record.  Kraus also filed a "motion for default judgment" on the docket in both cases that objected more generally to Taylor's failure to follow the district court's orders mandating submission of the trial court records.  He also objected to the magistrate judge's recommendations on similar grounds.  The district court denied all of these requests and ruled on the narrow record Taylor provided.

**C.**

Kraus appealed the denial of both petitions without the assistance of counsel on March 1, 2010.  Case No. 10-5261 relates to Kraus's first trial; Case No. 10-5262 is linked to Kraus's second trial.  Because the district court did not enter its judgments in a "separate document" as required by Federal Rule of Civil Procedure 58(a), we deemed these appeals to be timely, even though Kraus filed them well after the thirty-day time limit for filing a notice of appeal had expired.  *See* Fed. R. App. P. 4(a)(7)(A)(ii) (allowing additional 150 days for the filing of an appeal if the district court does not comply with Rule 58(a)).  We granted a COA in both appeals as to a limited subset of Kraus's claims in orders dated August 22, 2011.  As to the first trial, we agreed to review: (1) Kraus's claim that the closed-circuit television testimony violated his right to confrontation under *Maryland v. Craig*, 497 U.S. 836 (1990); and (2) whether or not the district court erred by denying the *Craig* claim without the relevant portions of the state court record before it under *Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003).  In the second trial, we certified three issues for review: (1) Kraus's claim that there was insufficient evidence to convict him under *Jackson v. Virginia*, 443 U.S. 307 (1979); (2) Kraus's claim that his trial counsel provided ineffective assistance by failing to object to the first-degree PFO designation under *Strickland v. Washington*, 466 U.S. 668 (1984); and (3) whether or not the district court erred by failing to consider relevant portions of the state-court record when evaluating claims (1) and (2) under *Adams*.  We also ordered that Kraus be appointed counsel on appeal.  Kraus's appointed counsel filed appearances on his behalf on October 4, 2011.

On September 14—just a week before we formally appointed counsel for Kraus—Kraus filed a *pro se* "motion for an extension of time."  The motion asks for additional time to address the court's failure to grant a COA on the Confrontation Clause issue in his second trial.  Kraus's appointed counsel then filed a formal motion to expand the COA on October 18, emphasizing Kraus's *pro se* status immediately after the court awarded the COA and the incongruity of granting a COA on the Confrontation Clause issue in the first trial, but not the second.  We construed both motions as motions for

rehearing. So construed, the motions were untimely under Federal Rule of Appellate Procedure 40(a), and we concluded that there were no "compelling reasons" for extending the time to bring the motion. 6th Cir. R. 40(a).

Kraus has asked us to reconsider this order and expand the COA to include a Confrontation Clause claim arising from the second trial so the district court can reconsider that claim on remand. Upon further review, we agree. We may grant Kraus's request to expand the COA out of time only "for the most compelling reasons." 6th Cir. R. 40(a). While this court's interlocutory orders are rarely altered as a practical matter, they are nonetheless "subject to revision." *R.E. Dailey & Co. v. John Madden Co.*, 983 F.2d 1068 (table), 1992 WL 405282, at *1 n.1 (6th Cir. Dec. 15, 1992).

Both of Kraus's petitions present his Confrontation Clause claim in a similar fashion. The petition arising from Kraus's first trial noted that "[t]he trial judge violated Mr. Kraus's confrontation right . . . by allowing both adult alleged victims to [testify] via closed-circuit T.V. because [Ky. Rev. Stat. § 421.350] applies only to children." In the petition addressing his second trial, Kraus claimed that "[t]he trial court abused its discretion . . . [by] permitting adult complainants to testify at trial via closed circuit television." Although the second petition did not use the word "confrontation," it sufficiently communicated the gravamen of Kraus's Confrontation Clause claim—remote testimony by adult witnesses. Given Kraus's *pro se* status, the differences in phrasing hardly seem significant enough to deny consideration of a Confrontation Clause claim in Kraus's second trial. This is particularly true when the second trial petition is considered in the context of this case's procedural history. The trial court used substantially the same procedure for examining Hale and Riley in both trials and relied on the rationale developed during the first trial to justify use of the procedure in the second trial.

In addition, the untimeliness of Kraus's application to reconsider the initial COA must be viewed from the appropriate perspective. We did not appoint appellate counsel for Kraus until one month after we granted his request for a COA. Nearly two weeks passed before Kraus's attorneys filed appearances on his behalf, and another two weeks

elapsed before those lawyers moved to expand the COA.  Given the unusual posture of this matter and the complexity of the two appeals, this case is a rare instance where a movant has shown "compelling reasons" for consideration of a late-filed request for reconsideration.  We therefore expand the COA for Kraus's petition arising from his second trial to include the following claim: whether the trial court violated Kraus's confrontation rights by allowing Hale and Riley to testify via closed-circuit television, *see Maryland v. Craig*, 497 U.S. 836 (1990).

## II.

In a typical *habeas* case, our standard of review would be dictated by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  But we do not apply that standard of review when "we do not reach the merits" of a § 2254 petition.  *See Jeffries v. Morgan*, 522 F.3d 640, 644–45 (6th Cir. 2008) (refraining from application of AEDPA deference in an opinion vacating the district court's judgment for failure to review the entire state trial court record prior to ruling on a *habeas* petition).  Accordingly, "we apply the traditional standard, and review the 'district court's legal conclusions de novo, but will set aside its factual findings only if clearly erroneous.'"  *Id.* (quoting *Brown v. Palmer*, 441 F.3d 347, 350 (6th Cir. 2006)).

## III.

Kraus's petitions raise many serious concerns about the constitutional soundness of his convictions, but we are unable to consider them at this time because there is no record of Kraus's actual trial proceedings to review.  The general rule in this circuit is that "a [d]istrict [c]ourt must make a review of the entire *state court trial transcript* in habeas cases, and where substantial portions of that transcript were omitted . . . a habeas case should be remanded . . . for consideration in light of the full record."  *Adams v. Holland*, 330 F.3d 398, 406 (6th Cir. 2003) (emphasis added) (vacating and remanding denial of a § 2254 petition after district court failed to consider portions of trial transcript relevant to petitioner's Confrontation Clause claim).  While there is no "strict rule requiring a district court to read the state-court trial transcript," the district court must

consider portions of that transcript that are "relevant to the petitioner's . . . claim." *Nash v. Eberlin*, 437 F.3d 519, 524–25 (6th Cir. 2006).

The *Adams* rule is particularly salient in the context of sufficiency of the evidence claims, such as the one Kraus raised with respect to his second conviction. In a § 2254 case where a petitioner cannot produce the evidence supporting his claim, AEDPA requires the respondent to provide the trial record to the district court when a petitioner challenges the sufficiency of the evidence supporting his conviction:

> If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

28 U.S.C. § 2254(f). In light of § 2254(f), this court has observed that "a constitutional sufficiency of the evidence challenge requires a careful review of the entire trial transcript by the habeas court when a petitioner disagrees with the challenged state court opinion's summary of the trial testimony or relevant facts." *Jeffries*, 522 F.3d at 644. Although Kraus paid a nominal filing fee and did not proceed *in forma pauperis*, the district court nonetheless recognized that Kraus was "unable to produce" the relevant records from his trials and ordered Taylor to provide the district court with these records. Taylor failed to produce the records of Kraus's trial proceedings or to justify his non-disclosure, and the district court did not insist on reviewing records before ruling on Kraus's petitions.

This case provides an excellent example of the sound rationale for requiring the district court to review actual trial records, rather than relying on mere assertions about those records contained in appellate briefs, when it considers a *habeas* petition. The key witnesses in Kraus's trials were his accusers, Hale and Riley. As alluded to earlier, the

circumstances of their testimony were unique. Both Hale and Riley function mentally on the level of a child. At trial, they testified via closed-circuit television with the assistance of interpreters and anatomically correct dolls. The descriptions of their testimony provided to the Kentucky courts on direct appeal by Kraus and the Commonwealth are inconsistent. For instance, the Commonwealth claimed on appeal that during Kraus's second trial, Hale indicated, using the dolls, that Kraus had physically "been on top of her" and that the two of them "had intercourse." The Commonwealth also claimed that Hale stated that Kraus "had put his penis on her breast . . . and buttocks," and that he told her that the two of them "might have babies." Kraus's characterization of this testimony is markedly different:

> Hale was asked to demonstrate what happened using the anatomical dolls. She pulled down the underpants of the girl doll, opened the boy doll's pants and touched his penis to the girl doll's chest. When immediately asked if she was showing that [Kraus's] penis touching her breasts, she said no. When asked to show where the penis touched, she held the boy dolls at an angle over the girl doll, still not showing a touching. When the prosecutor then asked leadingly if [Kraus] put "that, the penis, in there, in Jessica?" she said "yeah." When asked if he put his penis anyplace else, Ms. Hale pointed to the doll's breast. When asked leadingly if he put his penis anyplace like her behind, she pointed to the doll's bottom. When asked leadingly if he "put that in there?" she said "yeah."

Without the trial records, we fail to understand how the district court could have drawn a fair conclusion about the content of Hale's testimony. Moreover, even if consideration of assertions in briefs were an appropriate basis for determination of the content of the state court record, neither party explained in its briefs what Kraus or the jury would have observed during Hale's testimony via closed-circuit television. Thus, the briefs are of no use in evaluating Kraus's Confrontation Clause claims.

We have previously recognized that the *Adams* rule is not an absolute. The district court may be excused from examining state court trial records relevant to a particular assignment of error if (1) the state court opinions summarize trial testimony or relevant facts, and (2) the petitioner does not dispute those summaries. *Clark v. Waller*, 490 F.3d 551, 556 (6th Cir. 2007). But these cases do not fit this narrow

exception to *Adams*.  While the Court of Appeals's opinion addressing Kraus's first trial provides a limited summary of the case's background and the manner in which Hale and Riley supposedly testified, it does not provide details about how their examinations were actually carried out at trial, the content of the testimony they provided, or any other information relevant to the claims covered by the COAs this court issued.  Moreover, Kraus actively disputes both the state court's summary of the facts and Taylor's characterization of the evidence adduced at trial.  Finally, there is no summary of the evidence adduced in Kraus's second trial that would permit application of *Clark*, given that neither the Court of Appeals nor the Supreme Court issued a reasoned opinion addressing the second trial.  Therefore, Kraus's petitions fall within the core of *Adams*'s directive to the district court to review the records of state trial court proceedings.

Taylor's arguments against remanding these cases for expansion of the record and reconsideration, as *Adams* requires, lack merit.  He first argues that Kraus did not properly preserve this issue in the district court by objecting that the records provided were inadequate.  *See United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006) ("[T]his court generally will not consider an argument not raised in the district court and presented for the first time on appeal.").  But this court has never held that the *Adams* requirement may be waived.  Indeed, *Adams* describes the requirement to review the state trial court record as an imperative of the district court, which suggests a petitioner cannot waive it.  *See Adams*, 330 F.3d at 406 ("[T]he District Court *must* have the trial transcript before it" when considering a *habeas* petition).

But we need not definitively resolve the waiver issue in this case, for two reasons.  First, regardless of whether Kraus raised the issue or not, the district court ordered Taylor to turn over the "portions of the state court record pertinent to these issues."  Taylor did not do so, even though he has never claimed that such records are unavailable.  He asserts that he only needed to turn over documents he believed were "relevant" to the claims.  *See* Rules Governing Section 2254 Cases 5(c) ("The respondent must attach to the answer parts of the *transcript* that the respondent considers relevant." (emphasis added)).  He also claims that the district court had the power to

order further disclosures if it believed he had not complied with the orders. But Rule 5(c) specifies that the "transcript"—that is, the record of what actually occurred at trial as opposed to briefs that merely describe what occurred—must be provided. In light of our consistent pronouncements about the importance of reviewing the "state court trial transcript," *Adams*, 330 F.3d at 406, Taylor's disclosures to the district court were inadequate, and the district court should have ensured it had the proper records in front of it before adjudicating the merits of Kraus's petitions.

Second, the factual premise of Taylor's waiver argument is incorrect. Kraus objected to the adequacy of Taylor's disclosures on multiple occasions. He now concedes some deficiencies in these requests: he never made a formal "motion to expand the record"; he did not realize that the trial had only been recorded on videotape, meaning there were no written "transcripts" to turn over; and he focused on the disclosure of the record from his second trial, which carried the more serious criminal penalty, rather than his first. Nonetheless, as a *pro se* litigant, Kraus's filings in the district court ought to be "held 'to less stringent standards than formal pleadings drafted by lawyers,' and should . . . be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Applying this more lenient standard, Kraus repeatedly informed the district court that Taylor's disclosures foreclosed proper consideration of his petitions and did not comply with the district court's orders mandating disclosure. Neither the district court nor Taylor was responsive to these demands. Accordingly, we consider the *Adams* issue preserved.

Taylor's final argument against remand is that the record of what took place at trial is not material to consideration of Kraus's petitions. We disagree. All of Kraus's claims are fact-intensive and require close examination of what actually transpired at trial. In particular, the video recordings of the testimony Hale and Riley gave during each trial are critical to his Confrontation Clause claims. Without the videos, the district court could not meaningfully evaluate Kraus's *Craig* claims. *See Craig*, 497 U.S. at 851 (noting that witness "competen[cy]," a "full opportunity for contemporaneous cross-

examination," and the ability of trial participants to observe "the demeanor (and body) of the witness as he or she testifies" are important "safeguards of reliability" when a witness testifies via closed-circuit television).   Evaluation of Kraus's ineffective assistance of counsel claim would also be foreclosed without a full record of the events surrounding his plea to the first-degree PFO enhancement and subsequent sentencing. And as we held in *Jeffries*, a sufficiency of the evidence claim like the one arising from Kraus's second trial requires "a careful review of the entire trial transcript." *Jeffries*, 522 F.3d at 644.   The disclosures Kraus seeks are not merely material to his claims—they are vital.

## IV.

For these reasons, we vacate the judgments the district court entered in these cases and remand both cases for further proceedings consistent with this opinion. The district court should expand the records in both cases and reconsider the substantive constitutional claims identified in the COAs, including the Confrontation Clause claim arising from the second trial we have added to the COA in this opinion.   The expanded record should include, at the very least, the complete video recordings of Kraus's two trials, including the recordings of the closed-circuit testimony of Hale and Riley.   To the extent the district court finds that other trial records or a written transcript of those parts of the trial that do not implicate Kraus's Confrontation Clause claims would be helpful, it may exercise its discretion in directing their production.