**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0710n.06

Case No. 18-1876

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 18, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ERIC HOPSON, | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CONNIE HORTON, Warden, | ) | |
| | ) | |
|     Respondent-Appellee. | ) | **O P I N I O N** |

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

McKEAGUE, J., delivered the opinion of the court in which GIBBONS, J., joined. STRANCH, J. (pp. 18–22), delivered a separate opinion concurring in part and dissenting in part.

**McKEAGUE, Circuit Judge.** This habeas case stems from a robbery in Flint, Michigan on April 9, 2009. Petitioner Eric Hopson and codefendant Cedrick Beck robbed a Flint market. Beck shot one of the store employees, who later died of his injuries. Surveillance footage captured the scene. Hopson was tried in Genesee county court along with Beck, before separate juries. Hopson was convicted of second-degree murder, armed robbery, possessing a firearm during the commission of a felony, and being a felon in possession of a firearm. His habeas case challenges the sufficiency of the evidence supporting those convictions, along with the effectiveness of his trial counsel for failing to move to quash the indictment on the felon-in-possession charge. The district court denied habeas relief.

On appeal, Hopson asks us to reverse the district court and grant his petition for a writ of habeas corpus. In the alternative, Hopson requests a remand for the district court to view the surveillance footage, which was not included in the record below. We conclude that there was sufficient evidence to support Hopson's convictions to preclude a grant of habeas relief, Hopson has not established a right to relief on grounds of ineffective assistance of counsel, and remand is not necessary. We AFFIRM.

## I.  Facts and Procedural History

Eric Hopson and Cedrick Beck were tried together, in front of separate juries. The trial lasted ten days. The Michigan Court of Appeals summarized the relevant facts as follows:

> Defendants' convictions arise from their involvement in the robbery of two store employees, Peter Farah and Gregory Peterson, at a market in the city of Flint on April 9, 2009. Farah was shot during the offense and later died from his injuries. The store contained a Plexiglas partition that separated the cashier area from the main shopping area. While Farah and Peterson were both inside the enclosed cashier area, defendant Beck kicked open the door to the enclosed area, shot Farah, and ordered Peterson to lie down on the floor. Defendant Hopson also entered the cashier area and forced Peterson to remove his clothing. Both defendants took money before leaving the store.

*People v. Beck*, No. 301000, 2013 WL 3239706, at *1 (Mich. Ct. App. June 27, 2013) (per curiam).

The district court provided a more thorough account of the testimony offered at the trial. *Hopson v. MacLaren*, No. 15-cv-11582, 2018 WL 3390402, at *1–5 (E.D. Mich. July 12, 2018). We highlight the evidence relevant to Hopson's appeal here.

Many of the relevant details come from Hopson's own statement to the police. In it, he confirms that he came into the store after he heard Beck yelling. He confirms that he was the one who told "the man to get naked" (presumably Gregory Peterson, who testified at trial that the robbers told him to strip). Then, he "grabbed a bunch of lottery paper and twenty-dollars and ran" from the scene. He also said, "I didn't know [Beck] was going to rob the store right then; I thought

he was going to wait, but [he] didn't." This statement was read at both the preliminary examination and the trial.

Other witnesses added relevant details. There was evidence that Beck used a shotgun. For example, Gregory Peterson, the robbery victim who survived the incident, testified that he saw a shotgun. However, one witness testified that Beck thought the gun was broken and did not think it would go off. There was also evidence that Beck and Hopson knew each other before the robbery and were working as a team. One witness said the two of them "kind of grew up together." Another witness said that, after the incident, Beck referred to the other guy he had with him during the robbery as his "partner." Peterson testified that the second person to enter the market (presumably Hopson) warned the first person (presumably Beck) that somebody was coming.

Finally, the jury was also shown a surveillance video that captured the relevant events. Although the video was submitted to the state appellate court on direct appeal, it was not before the federal district court on habeas review.

Although Hopson was charged with felony murder, the jury convicted him of second-degree murder. It also convicted him of two counts of armed robbery, possessing a firearm during the commission of a felony (a.k.a. "felony-firearm"), and possessing a firearm as a convicted felon. He was sentenced to concurrent terms of 675 to 1125 months' imprisonment for the second-degree murder conviction, 427 to 900 months' imprisonment for each armed robbery conviction, and 57 to 120 months' imprisonment for the felon-in-possession conviction, all to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction.

On direct review, Hopson argued that there was insufficient evidence to support his murder, felony-firearm, and felon-in-possession convictions. He also argued that his counsel was ineffective for not moving to quash the felon-in-possession charge. Finally, he brought several

sentencing issues. The Michigan Court of Appeals affirmed the convictions. *Beck*, 2013 WL 3239706, at *4–7. The Michigan Supreme Court denied leave to appeal.

Hopson then filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. He raised the same claims of error as he did in his direct appeal. The district court denied the petition but granted a certificate of appealability on all the sufficiency claims. *Hopson*, 2018 WL 3390402, at *14. This court then expanded the COA to include Hopson's ineffective-assistance claim.

This court also appointed counsel to assist Hopson in his claim. Appointed counsel filed a motion for summary vacatur and remand, arguing that the district court's failure to review the surveillance footage merited an immediate remand before the full merits briefing. But we ruled that the motion for remand would be submitted to the panel along with the merits briefs.

## II. Discussion

### A. *Standard of Review*

When reviewing a denial of habeas relief, this court reviews the district court's legal conclusions de novo and its findings of fact for clear error. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc). "However, where, as here, the district court does not itself conduct an evidentiary hearing and relies instead exclusively on the state-court record, we review the district court's factual findings de novo." *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (per curiam). Under the Antiterrorism and Effective Death Penalty Act of 1996, federal courts are not to grant habeas relief on a claim that was "adjudicated on the merits in State court" unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To be an "unreasonable application" of federal law, the state court decision must have been "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

Hopson argues that his conviction was an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). A habeas petitioner is entitled to relief under *Jackson* if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Although state law supplies the substantive elements of the offense, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam). The Supreme Court has insisted that courts remember that, when applying *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).

On top of this already-deferential standard, AEDPA adds even more deference. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). The ultimate question is whether the state court unreasonably applied the *Jackson* standard to the facts of the case. *See id.* Moreover, when applying AEDPA, the more general the rule, the more leeway is given to state courts. *Davis*, 658 F.3d at 535. And the *Jackson* standard is "exceedingly general," so state courts should be given "considerable leeway." *Id.* This court has described the sufficiency standard as a "nearly insurmountable hurdle" for habeas petitioners. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

B. *Second-Degree Murder*

1. AEDPA Deference Applies to the Michigan Court of Appeals' Adjudication of the Second-Degree Murder Claim.

Hopson's first argument is that AEDPA's deferential standard does not even apply to the state court's analysis of the murder conviction because that court allegedly applied the wrong legal standard. But that is not what happened. Hopson's claim on direct appeal was the same as his claim in this case: that there was insufficient evidence to convict him of second-degree murder under an aiding-and-abetting theory. *Beck*, 2013 WL 3239706, at *4. The Michigan Court of Appeals recited the elements of second-degree murder and of aiding and abetting. *Id.* After analyzing the evidence, the court concluded that the "evidence was sufficient to support defendant Hopson's conviction of second-degree murder." *Id.* at *4–5.

Hopson takes issue with the court's discussion of felony murder. Hopson had been charged in the trial court with first degree felony murder. *Id.* at *4. The jury acquitted him of felony murder but convicted him of second-degree murder as a lesser-included offense. *Id.* The Michigan Court of Appeals, however, thought that there was also sufficient evidence to convict Hopson of felony murder, and it gave reasons why. *Id.*

But this discussion does not render the state court's adjudication an unreasonable application of federal law. Under Michigan law, second-degree murder is a lesser-included offense of felony murder. *See People v. Clark*, 732 N.W.2d 605, 611 (Mich. Ct. App. 2007) ("[S]econd-degree murder is first-degree murder *minus* . . . the enumerated felony." (quoting *People v. Carter*, 236 N.W.2d 500, 502 (Mich. 1975)). "The element of malice required for statutory felony murder [is] . . . the same as that required for second-degree murder[] . . . ." *People v. Flowers*, 477 N.W.2d 473, 477 (Mich. Ct. App. 1991). Here, the state court found that Hopson provided "aid and encouragement" to Beck's act that resulted in death—its discussion of felony murder illustrates

simply that it would *also* have found that the "act" was committed in the perpetration of an enumerated felony, as is required for a felony murder conviction. *Beck*, 2013 WL 3239706, at *4–5. And the court found that Hopson acted with malice, which is the same standard under either felony- or second-degree murder. *Beck*, 2013 WL 3239706, at *4–5. Accordingly, the state court's adjudication was not an unreasonable application of law merely because it discussed felony murder. AEDPA deference applies.

2. Sufficiency of the Evidence for Second-Degree Murder

Hopson was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317. The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). The malice element can be satisfied by proving "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful [sic] disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.*

Hopson was convicted for aiding and abetting second-degree murder. Proving aiding and abetting involves showing that "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (quoting *People v. Turner*, 540 N.W.2d 728, 733–34 (Mich. Ct. App. 1995)). To convict someone under an aiding-and-abetting theory, the prosecution does not need to prove a mental state higher than that required for the principal. *People v. Mass*, 628 N.W.2d 540, 548 (Mich. 2001) ("Conviction of a crime as an aider and abettor does not require

a higher level of intent with regard to the commission of the crime than that required for conviction as a principal."). Accordingly, it is sufficient to show that Hopson acted with malice.

An aider and abettor's state of mind is determined based on the facts and circumstances. Relevant factors include (a) "a close association between the defendant and the principal," (b) "the defendant's participation in the planning or execution of the crime," and (c) "evidence of flight after the crime." *Carines*, 597 N.W.2d at 135 (quoting *Turner*, 540 N.W.2d at 734). Also, "Michigan law provides that 'malice can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon.'" *Stewart v. Wolfenbarger*, 595 F.3d 647, 659 (6th Cir. 2010) (quoting *Hill v. Hofbauer*, 337 F.3d 706, 720 (6th Cir. 2003)). Finally, under Michigan law, "a defendant who intends to aid, abet, counsel, or procure the commission of *a* crime, is liable for that crime as well as the natural and probable consequences of that crime." *People v. Robinson*, 715 N.W.2d 44, 46 (Mich. 2006).

Here, the relevant circumstances support an inference of Hopson's malice. There was evidence that Hopson had a close association with the principal, Beck; one witness testified that the two grew up together. There was evidence that Hopson participated in execution of the robbery which resulted in Farah's death by, for example, warning Beck that someone was coming, ordering Peterson to strip naked, and taking money from the scene. And there was evidence that Hopson fled the scene after the robbery and shooting; Hopson himself, in his statement to the police, said he ran once he took the money and lottery paper. *Id.* Finally, Michigan cases have upheld convictions for aiding and abetting second-degree murder as a natural and probable consequence of armed robbery. *See, e.g.*, *People v. Brown*, No. 329034, 2016 WL 6780632, at *2 (Mich. Ct. App. Nov. 15, 2016) (per curiam) ("It is clear that a natural and probable consequence of a plan to commit armed robbery is that one of the actors may escalate the robbery into a murder.").

Hopson disagrees, arguing that the state has shown merely that he participated in a robbery, which cannot alone support a finding of malice for second-degree murder. His sufficiency argument turns on his contention that the evidence did not show he knew Beck had the gun *before* Beck entered the store.

But the jury could have inferred Hopson's knowledge of the gun based on evidence of the gun's size. The surviving robbery victim testified that the barrel of the gun alone was around 18 inches long. And multiple witnesses said it was a shotgun. The size of a gun can reasonably be used to infer that a defendant knew his accomplice was carrying a gun. *See, e.g.*, *People v. Nelson*, No. 281567, 2010 WL 785925, at *2 (Mich. Ct. App. Mar. 9, 2010) (per curiam) (noting that "the weapon involved in the shooting was an AK–47 assault rifle, which is a larger weapon that is not easily concealed, thereby supporting an inference that" the accomplice "was aware that" the principal "was armed with a firearm").[1] Given this evidence, along with the facts and circumstances described above, the state court could reasonably have found sufficient evidence to uphold a finding of malice. Thus, we cannot say that the state court unreasonably applied the *Jackson* standard in upholding Hopson's conviction for second degree murder.

## C. *Firearm Convictions*

Hopson was convicted of being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f. The elements of felon-in-possession are (1) being a felon who possessed a firearm (2) before one's right to do so was formally restored by the statutory process. *People v. Bass*, 893 N.W.2d 140, 158 (Mich. Ct. App. 2016) (per curiam); *see also* Mich. Comp. Laws

---

[1] Hopson argues that the state has not shown evidence about the size of the gun sufficient to show that it was as difficult to conceal as the AK-47 in *Nelson*. But the state has pointed to evidence that the gun's barrel was around 18 inches long, which would make it "a larger weapon that is not easily concealed." *Nelson*, 2010 WL 785925, at *2. Hopson also points us to evidence that Beck thought the gun was defective, but the jury was not required to find this evidence credible.

§ 28.424. Here, no one disputes that (a) Hopson was a felon whose right to possess a firearm had not been restored and (b) there was no evidence presented in the state court that Beck was a felon. So the only question is whether Hopson "possessed" the shotgun used in the robbery and shooting.

Hopson was also convicted of possessing a firearm during the commission of a felony, also known as "felony-firearm," in violation of Mich. Comp. Laws § 750.227b. Under Michigan law, "[t]he elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999). The jury found Hopson guilty of felony-firearm as to both the murder and the armed-robbery convictions. We have already upheld his murder conviction, and Hopson does not even challenge his armed-robbery conviction. Accordingly, if Hopson possessed the shotgun, then his habeas claim on this conviction fails as well.

Hopson was not the one physically holding the shotgun; that was Beck. But the lack of actual possession does not mean Hopson cannot be liable for possession. Michigan law recognizes the theory of "constructive possession." A defendant "has constructive possession if there is proximity to the article together with indicia of control." *People v. Burgenmeyer*, 606 N.W.2d 645, 649 (Mich. 2000) (per curiam) (quoting *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989)). "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id.*

Also, possession need not be exclusive; Michigan also recognizes "joint possession by defendants acting in concert." *Hill*, 446 N.W.2d at 141. Joint possession can be found "if the evidence suggests two or more defendants acting in concert." *Id.* at 143. Joint possession is a type of either actual or constructive possession; the essential inquiry is still whether the defendant has

control over the weapon. *People v. Strickland*, 810 N.W.2d 660, 664 (Mich. Ct. App. 2011). In any event, possession is a question of fact for the jury. *Id.*

Here, there is sufficient evidence to preclude habeas relief on the firearm convictions. There is evidence that Hopson entered the store after Beck fired the shotgun, ordered a cashier to strip naked, and then took cash and some lottery tickets. A jury could infer that Hopson only had the confidence to take such brazen action because he knew he could have Beck wield the shotgun against the cashier should the cashier refuse to comply or attempt to prevent Hopson's theft. The facts of Hopson's case are similar to those of *People v. Watson*, a Michigan case where the court affirmed a conviction on a joint-possession theory. No. 338110, 2019 WL 3315168, at *9 (Mich. Ct. App. July 23, 2019) (per curiam). There, the defendant and his accomplice Jones "were working together—Jones held the gun while defendant relieved the victim of his property and cash." *Id.* So too here. In that way, Hopson's control of Beck's shotgun is similar to that of the defendant in *Watson*; Hopson relied on his control of his accomplice's firearm to rob the victim. *See id.* Thus, there was sufficient evidence to preclude habeas relief on the grounds that Hopson and Beck jointly possessed the shotgun, with Beck retaining actual possession and Hopson retaining constructive possession.

The dissent believes this case is more similar to *People v. Benard*, 360 N.W.2d 204 (Mich. Ct. App. 1984), where the Michigan Court of Appeals found that a defendant acting in concert with an accomplice carrying a firearm did not have control over the accomplice's firearm, even though the defendant raped a woman who complied with the defendant's orders that she lie naked on the couch only because his accomplice was pointing a gun at her. 360 N.W.2d at 205. It is true that there are similarities between Hopson's case and *Benard*, but *Benard* was decided before

*People v. Hill*, the Michigan Supreme Court case that recognized constructive possession when the possession was by an accomplice. 446 N.W.2d at 143.

In *Hill*, the court explicitly "recognize[d] the theory of joint firearm possession if the evidence suggests two or more defendants acting in concert." *Id*. While the facts in *Hill* are distinguishable from Hopson's case because the two defendants each possessed a portion of a disassembled firearm, *Hill*'s conclusion that a person can be charged with constructive possession if he "knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons," *id.*, directly conflicts with *Benard*'s conclusion that possession cannot be had "even though the first person is acting in concert with the second person," *Benard*, 360 N.W.2d at 205. Because *Hill* is a later decision and by the Michigan Supreme Court, it controls over *Benard*, to the extent that *Benard* could be read as rejecting a theory of constructive possession where one defendant does not hold the firearm.

Subsequent decisions by the Michigan Court of Appeals show that *Benard* has been limited to situations in which there was no evidence that the defendant had exercised control over his accomplice's use of the firearm. For example, in *People v. Trice*, the court analogized to *Benard* when concluding that although the "defendant had proximity to the gun," he had "no realistic 'right to control' it." No. 309314, 2013 WL 1776418, at *2 (Mich. Ct. App. Apr. 25, 2013). It was significant that "[n]o . . . evidence was presented in this case to establish that defendant had the right to control the use of the weapon by his accomplice." *Id.* at *2 n.3. By contrast, the court distinguished *Benard* in *People v. Wilson* and concluded that the defendant "had the right to control the use of the weapon held by his accomplice" because the defendant had "directed his accomplice to 'show [the victim] the gun.'" No. 268417, 2007 WL 914622, at *1 (Mich. Ct. App. Mar. 27, 2007). In sum, Hopson's case is easily distinguishable from *Benard*, where there was no evidence

that the defendant exercised control over the firearm. Here, there was sufficient evidence from which a jury could find that the Hopson relied on his control of his accomplice's firearm to rob the victim, just as in *Watson* and *Wilson*.

The dissent next maintains that we cannot rely on *Watson* because on federal habeas review of state-court proceedings "the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). While this is true, *Pinholster* did not place any new restriction on considering state court cases decided after a conviction has been finalized, which we may do as long as the later decision did not change the law's interpretation at the time of conviction. *See Fiore v. White*, 528 U.S. 23 (1999). And *Watson* did not. *Watson* was a clear continuation of Michigan's constructive possession cases that have found constructive possession exists when the defendant is in proximity to the firearm and has an indicium of control over it. *See, e.g., Hill*, 446 N.W.2d at 143. And the court in *Watson* pointed to significant evidence that the defendant had exercised some control over the firearm. For instance, the accomplice at one point asked the defendant if the accomplice should kill the victim, and the defendant directed the accomplice not to shoot. 2019 WL 3315168, at *9. *Watson* was not a "new" interpretation of Michigan's law on constructive possession, and so it is permissible for us to consider it.

### D.  *Ineffective Assistance of Counsel*

Hopson's final claim is that his trial counsel was constitutionally ineffective for failing to move to quash the felon-in-possession charge at the preliminary examination. The Sixth Amendment guarantees to criminal defendants to the right to the assistance of counsel in their defense. U.S. Const. amend. VI. The right to counsel means the right to *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Ineffective assistance of counsel

occurs when (1) counsel's performance is deficient, and (2) the deficient performance prejudiced the defendant. *Id.* at 687. Deficient performance means "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This standard is "highly deferential," meaning counsel's performance is presumed to be reasonable. *Id.* at 689. Prejudice means "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The test for ineffective assistance of counsel is deferential even on direct review. And under AEDPA, if a state court determines that *Strickland*'s high bar was not satisfied, the federal habeas court cannot disturb that judgment if "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Supreme Court has described this review as "doubly" deferential. *Id.*

Hopson has not met this high bar on the performance prong. The state court found that Hopson's counsel was not deficient for failing to file a motion to quash the felon-in-possession charge. *Beck*, 2013 WL 3239706, at *6. Counsel is not deficient for failing to file a meritless objection. *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012). Moreover, the standard of proof is lower at the bindover stage (in the preliminary examination) than the standard at trial. *People v. Greene*, 661 N.W.2d 616, 626 (Mich. Ct. App. 2003). It is enough to show that there is evidence supporting each element of the offense or evidence from which the elements may reasonably be inferred. *People v. Hudson*, 615 N.W.2d 784, 789 (Mich. Ct. App. 2000).

Here, given the low standard of proof at the preliminary examination, the facts do not warrant a grant of habeas relief on grounds of deficient trial-counsel performance. At the preliminary examination, the state presented evidence of the concerted action supporting the

finding that Hopson possessed the firearm. In his statement to the police, which was offered as evidence at the examination, Hopson admitted that after he heard Beck yelling, he came into the store and told "the man" (Peterson) to strip naked and then took money and lottery paper from the store. As discussed earlier, this evidence supports a finding of joint possession. Moreover, Hopson's lawyer objected to the bindover on the record. He simply did not file a separate motion to quash the indictment, which he might have reasonably thought was meritless. All things considered, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. Hopson is thus not entitled to habeas relief on the grounds of ineffective assistance of counsel.

### E. *Remand*

Hopson argues in the alternative that his case should be remanded to the district court for reconsideration in light of the surveillance footage. The video was submitted to the state appellate court, but it was not submitted to the federal district court. According to Hopson, because the state appellate court relied on the surveillance video in upholding his convictions, this court cannot conduct a meaningful habeas review without having the video.

The general rule in our circuit is that the district court "must make a review of the entire state court trial transcript in habeas cases." *Adams v. Holland*, 330 F.3d 398, 406 (6th Cir. 2003). If "substantial portions of [the] transcript were omitted," the court of appeals should remand the case to the district court "for consideration in light of the full record." *Id.* According to Hopson, because the surveillance footage was omitted from the district court record, the case should be remanded under the *Adams* rule. This is a legal question that we review de novo. *Jeffries v. Morgan*, 522 F.3d 640, 644–45 (6th Cir. 2008).

We begin by noting that requiring a district court to procure a trial exhibit, rather than a trial transcript, would be treading new ground in this circuit. Our precedents have never remanded for a district court to review a trial exhibit. Rather, we have remanded for the district court to review transcripts, *see, e.g.*, *id.*; *Adams*, 330 F.3d at 406, or video recordings prepared in lieu of transcripts, *see Kraus v. Taylor*, 715 F.3d 589, 592, 598 (6th Cir. 2013). Similarly, Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts mentions transcripts (including "proceedings [that] have been recorded but not transcribed"), briefs, and opinions—not exhibits. And here, the district court's opinion illustrates how it did, in fact, examine the trial transcripts. *See Hopson*, 2018 WL 3390402, at \*1–5. The surveillance footage is not a recording of what occurred at trial; it is an exhibit that was presented at the trial. Hopson is thus asking for an extension of the *Adams* rule.

We need not decide, however, whether *Adams* could ever be extended to include trial exhibits, because we conclude that, on the facts of this case, remand is not required. Rather, this case falls under the exception we recognized in *Clark v. Waller*, 490 F.3d 551, 556 (6th Cir. 2007). "[T]he *Adams* rule is not an absolute." *Kraus*, 715 F.3d at 596. The district court need not examine trial records if two conditions are met: "(1) the state court opinions summarize trial testimony or relevant facts, and (2) the petitioner does not dispute those summaries." *Id.* (citing *Clark*, 490 F.3d at 556). It is not enough that a petitioner merely "takes issue with the state court's factual conclusions." *Clark*, 490 F.3d at 555. If, however, a party either (a) disputes the factual account given by the state appellate court or (b) relies on additional evidence not referenced in the appellate opinion, then the case should be remanded for the federal district court to review the trial transcript. *Id.* Here, Hopson does neither. His arguments to the contrary are not persuasive.

First, Hopson argues that the video could show that Hopson did not enter the store until after Beck fired the gun. But the state court never said Hopson was in the store when the gun went off. 2013 WL 3239706, at *1. What is more, the state's argument before this court presumes that Hopson did not enter the store until after Beck had fired. *See* Appellee Br. at 11 ("Beck entered the store while Hopson waited outside as a lookout. When Beck shot one of the two store clerks (who later died), Hopson entered . . . ."). This is not a case like *Kraus* where parties are giving inconsistent accounts of what occurred in the video. *Kraus*, 715 F.3d at 596. Rather, on the question of when Hopson entered the store, Hopson offers an account no different from either the state appellate court or the state on habeas review.

Second, Hopson argues that the district court should review the video to determine the size and concealability of the gun Beck was carrying. But here again, Hopson does not dispute the state appellate court's factual account; the court never said Beck's gun was not concealed when he entered the store. *Beck*, 2013 WL 3239706, at *1. And here too, the state readily admits that Beck had the gun concealed. Oral Arg. at 16:14-16:28. Also, we have already concluded that there was sufficient non-video evidence about the gun's size for a rational juror to infer that Hopson knew about Beck's shotgun. Thus, this is not a case where "[w]ithout the videos, the district court could not meaningfully evaluate" the claims. *Kraus*, 715 F.3d at 598. Instead, Hopson is simply challenging the inferences that can be drawn from the video, which is insufficient under *Clark*. 490 F.3d at 555. Therefore, Hopson's case does not require a remand.

### III.  Conclusion

For these reasons, we AFFIRM the judgment of the district court.

**JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part.**

I concur in the majority opinion's conclusion that based on testimony about the gun's large size, a rational trier of fact could conclude beyond a reasonable doubt that Hopson knew Beck brought a deadly weapon to the robbery. On that basis, sufficient evidence existed under Michigan law to convict Hopson of second-degree murder. But because no evidence shows that Hopson ever constructively possessed the weapon, he is entitled to habeas relief on his sufficiency of the evidence challenges to the felon-in-possession and felony-firearm convictions.[1] I respectfully dissent as to my colleagues' reasoning and conclusions for those challenges.

The decision of the Michigan Court of Appeals in *People v. Benard* makes clear that the Warden's theory of joint possession as a form of constructive possession is illogical: "Realistically, [Hopson] did not control the weapon which was in [Beck's] hand. [Hopson] was in proximity to the weapon but [Beck] had control of the gun." 360 N.W.2d 204, 205 (Mich. Ct. App. 1984). Under Michigan law, "[w]here a weapon is actually in the hands of a second party," possession cannot also be "held by a first person even though the first person was acting in concert with the second person." *Id.* at 204. This seems to me to state a simple and clear rule that applies to this case. Hopson could not have had the power to exercise dominion or control over Beck's gun because, even though Hopson was in proximity to the weapon, once he came into the store while the robbery was in progress, Beck had control of the gun the entire time.

The majority opinion admits that *Benard* is on point, but then maintains that "the theory of joint firearm possession if the evidence suggests two or more defendants acting in concert" articulated in *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989), modifies or controls over *Benard*. In *Hill*, the two defendants each had a piece of a shotgun concealed in their clothing. *Id.* at 141.

---

[1] Given my view that insufficient evidence existed to support the felon-in-possession conviction, I would also analyze Hopson's interconnected ineffective assistance of counsel challenge differently than the majority opinion.

The court held that this constituted constructive possession of the full shotgun in large part because there was "proximity to the [shotgun] together with indicia of control." *Id.* at 143. Generally, *Hill*'s broad language does not divorce its holdings from the particular and distinctive facts it presents or make it inconsistent with *Benard*, in which the indicia of control were insufficient. *Hill* did not mention *Benard*, much less clarify, alter, or abrogate it, as the Michigan Court of Appeals confirmed (albeit in an unpublished opinion) nearly 24 years later. *People v. Trice*, No. 309314, 2013 WL 1776418 (Mich. Ct. App. Apr. 25, 2013) (per curiam). There, the court cited *Hill*, then stated *Benard*'s rule and concluded that "[n]o subsequent case law has held otherwise." *Id.* at *1–2. This analysis—by a state court, best situated to interpret and apply state law—undermines the majority opinion's conclusion that *Hill* somehow renders *Benard* inapplicable.

Even applying *Hill*'s broad language, no similar indicia of control are present here, notwithstanding the majority opinion's statements to the contrary. Hopson neither threatened to shoot or kill the victims nor referred to the fact that Beck had a gun. Hopson was not in the store when Beck fired the gun. The majority opinion points to *People v. Wilson*, No. 268417, 2007 WL 914622 (Mich. Ct. App. Mar. 27, 2007) (per curiam), which held that the required indicia of control existed because the defendant had told his accomplice to brandish a gun. *Id.* at *1. But, citing *Benard*, the court also stated that "[w]here an accomplice simply displays a weapon while the defendant commits an offense, the defendant does not have constructive possession over the weapon because he does not control the weapon in the accomplice's hands." *Id.* So, I disagree with the majority opinion: the dearth of evidence of indicia of control means this case is far more like *Benard* (and *Trice*) than *Wilson*.

The majority opinion also opines that *People v. Watson*, No. 338110, 2019 WL 3315168 (Mich. Ct. App. July 23, 2019) (per curiam), more closely resembles this case. But notably,

*Watson* did not exist until years after the state courts decided Hopson's case. Hopson was convicted on October 14, 2010. *People v. Hopson*, No. 10-026263-FC (7th Cir. Ct. (Mich.)). The Michigan Court of Appeals affirmed his conviction on June 27, 2013. *People v. Beck*, No. 301054, 2013 WL 3239706, at *5–6 (Mich. Ct. App. June 27, 2013). The Michigan Supreme Court also affirmed, on March 28, 2014. *People v. Hopson*, 843 N.W.3d 752 (Mich. 2014). *Watson* was not decided until July 23, 2019. The state courts could not apply it to Hopson because it did not exist. Even if it had, *Benard*, a published decision, controlled over the unpublished *Watson*. *See* Mich. Ct. R. 7.215(C)(1). Again, as *Trice* noted, *Benard* was still good law at the time of Hopson's conviction and during the state courts' review of his case. 2013 WL 1776418, at *2. The fact that *Watson* was not before the state courts that decided Hopson's case counsels against its use here. Section 2254 cases "require[] an examination of the state-court decision at the time it was made[,]" and so "the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court," including "'the correct governing legal principle' in existence at the time." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)).

The majority opinion acknowledges *Cullen*, but maintains that *Fiore v. White*, 528 U.S. 23 (1999), allows this court to apply certain state-court cases decided after the conviction. That is so. As the Ninth Circuit has noted, *Fiore* and its post-certification counterpart, *Fiore v. White*, 531 U.S. 225 (2001), can be fairly read to "stand[] for the simple proposition that the reviewing court is required to apply the law as it existed when the defendant's conviction became final," or, more "narrowly[,] . . . that clarifications [as opposed to changes] in state law apply retroactively to the date of the defendant's conviction, to the extent that clarification stated the correct interpretation of the law at the date the conviction became final." *Moore v. Helling*, 763 F.3d

1011, 1019–20 (9th Cir. 2014). At the same time, however, this court has reasoned when discussing *Fiore* that "[e]ven faced with a state law that has been authoritatively interpreted by a state's highest court, the Supreme Court has at times been reluctant to base its disposition of a habeas claim on that interpretation when the state court did not specify whether its authoritative construction had always been the law or was a new interpretation of the law." *Jenkins v. Dailey*, 348 F. App'x 114, 119 n.3 (6th Cir. 2009). Not only was *Watson* not decided by Michigan's highest court, but it contains no discussion of whether it was interpreting what had always been the law or promulgating a new interpretation—and, as an unpublished opinion with no precedential import, that would be unlikely anyway. 2019 WL 3315168, at *8–9. *Fiore* does not support using *Watson* in the way the majority opinion does.

So, despite the majority opinion's suggestion, there are no conflicting interpretations of state law to resolve; even if *Hill* and *Watson* both apply, they simply involve facts that distinguish them from *Benard*. And even if Michigan law regarding constructive possession were unclear, it would be an unreasonable application of federal law to resolve ambiguity against a criminal defendant and in favor of the State when it was the State's burden at trial to provide sufficient evidence to prove each element of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

In adopting the Warden's proposed and incorrect joint possession rule, the majority opinion relies on speculation about what Peterson may have been thinking when he obeyed Hopson's commands. But even if we assume that an inference about Peterson's perception could reasonably be drawn from his conduct, this approach is problematic. Take, for example, a hypothetical conclusion that if Peterson believed Hopson had *actual possession* of a gun, this belief would make Peterson more likely to obey a command to take his clothes off and hand over money. But

evidence that Peterson held this belief would certainly be insufficient to prove actual possession beyond a reasonable doubt because Peterson's belief that Hopson had a gun would not change the reality that Hopson did not have a gun. The same logic shows that insufficient evidence exists to prove Hopson had constructive possession. Even if we assume what the record does not tell us— that Peterson believed Hopson had the power and intent to control Beck's gun—that perception is insufficient to show that Hopson had this authority. Beck, not Hopson, in fact had control of the gun throughout the incident. Under *Benard*'s clear rule, constructive possession cannot be established beyond a reasonable doubt under these circumstances.

For these reasons, I respectfully dissent as to my colleagues' reasoning and holdings related to the firearm convictions.